THE STATE, DAVID A. ZABRISKIE ET AL., PROSECUTORS, v. THE TRUSTEES OF SCHOOL DISTRICT No. 10, IN THE COUNTY OF BERGEN.

By the provisions of the "Act for building school houses in townships," approved March 11th, 1880 (*Rev. Sup.*, p. 929), as now altered by the amendatory act of February 22d, 1888 (*Laws*, p. 93), power is given to the voters of a school district at an annual or special meeting to vote and appropriate money (among other things) for the purchase or acquirement of lands and the construction of a school house, at such place in the school district as the school trustees thereof may designate. *Held*—

1. That the trustees must designate to such meeting the place where the lands proposed to be purchased or acquired lie, and the voters must vote on the purchase or acquisition of the lands so designated.

2. That when notice of the object of such meeting should be given it must contain some description of the lands so designated, and a resolution to purchase lands not so designated is not within the powers of such a meeting.

*Certiorari* removing proceedings of School District No. 10, in the County of Bergen.

Argued at June Term, 1889, before Justices REED, MAGIE and GARRISON

For the prosecutors, *A. D. Campbell.*

For the defendants, *P. W. Stagg.*

The opinion of the court was delivered by

MAGIE, J.   Two of the objections made by prosecutors seem fatal to these proceedings.   The following facts, which appear in the case, will indicate the questions raised by these objections.

On December 10th, 1888, the trustees of School District No. 10, in the County of Bergen, gave public notice to the legal voters of the district of a special school meeting to be held on December 20th, 1888.   The notice contained, among other things, the following, viz.:

"At which meeting the trustees will submit the question of empowering them to bond the district for the sum of five thousand dollars, one thousand dollars of this sum to be used for the purpose of purchasing land, selected by the trustees, now owned by Barney Cole, situated on the southeast corner of road leading to Hackensack and a new avenue leading from said road to New Bridge, about 1,000 feet from present school building."

On December 20th, 1888, the meeting assembled pursuant to such notice, voted on and, it is claimed, passed a resolution, of which the following is a part, viz.:

"*Resolved,* That the trustees of School District No. 10 be authorized to borrow the sum named and apportioned in the call for the meeting, the sum of five thousand dollars, one thousand dollars for the purchase of land for the erection of a new school house thereon, recommended and located by the trustees in call of meeting, when a good and sufficient deed shall be given, and also a right of way through a new avenue leading to Cherry Hill for the benefit of said school land to be purchased, and to contain one acre."

Affidavits, taken under a rule, show that Barney Cole did not own the land described in the notice. They tend to show that the trustees, in giving the notice, and the voters in voting the resolution, intended a tract of land owned by Cole, but not answering the description contained in the notice. The notice contained nothing respecting the right of way which the resolution directed should be purchased.

Power to appropriate money to purchase lands and to build school houses was originally given to school districts by section 86 of the "Act to establish a system of public instruction," approved March 27th, 1874. *Rev., p.* 1085. That act, so far as regards the exercise of those powers by districts within townships, seems to have been superseded by the "Act for building school houses in townships," approved March 11th, 1880. *Rev. Sup., p.* 929. The first section of that act gave authority to any school district at an annual meeting to vote money to build a school house and to provide land for that purpose not exceeding      acres, at such place in said school district as the school trustees thereof may designate, provided a majority of the taxable residents of the district should be present at such meeting and vote " on any proposition presented for the selection of a place and voting money as aforesaid."

An amendatory act, approved March 22d, 1886 (*Rev. Sup., p.* 930), amended the first section so as to limit the amount of land to be acquired (which had been left blank in the original act) to five acres.

The first section of the original act contained a grant of power to acquire such lands by purchase or condemnation, and the subsequent sections prescribed the mode of proceeding to condemn.    The first section, as amended in 1886, continued the same grant, but changed the proviso so as to read thus: "provided, that a majority of the taxable residents of said school district shall be present and vote on any proposition for the condemnation of land in accordance with the provisions of this act."

The same first section was again amended by a supplement, approved February 22d, 1888.   *Pamph. L., p.* 93.   By this amendment some additional powers were conferred, and it was provided that the district could exercise all these powers at either an annual meeting or at a special meeting called for that purpose upon legal notice.   Power to acquire land by purchase or condemnation was continued, but the proviso was again altered so as to read : " provided, a majority of the taxable residents of said school district shall be present at any meeting as aforesaid, and shall vote on any proposition presented for the condemnation of land   *   *   *   ."

The act as thus altered was in force at the time of the meeting in School District No. 10, and the powers of the voters were derived therefrom.   The construction of its provisions is in dispute.

Prosecutors contend that it requires the trustees of the district to designate to the meeting of voters the tract of land proposed to be purchased or condemned, and the voters when met may only vote for or against the appropriation for its purchase or acquisition by condemnation.

Defendants contend that the act does not require any precedent designation of land by the trustees, but authorizes the voters to appropriate money for the purchase of lands or the acquisition of lands by condemnation, generally, and without specific description, leaving to the trustees the subsequent selection of the lands.

In my judgment, the meaning attributed to the act in this respect by the prosecutors is the correct meaning.

It is in accord with the general policy of the School act, that the business of district meetings shall be such as is placed before them by the trustees. By section 86 the trustees are required to give notice of the annual meeting, and therein to state the object of the meeting and the amount of money desired to be raised, and it is provided that no greater sum than the amount so designated can be raised. By subdivision 11 of section 39, which gives authority to call special meetings of the legal voters of a district, it is provided that such meetings should be called with the same formality as the annual meetings, and business not set forth in the notice of special meetings is expressly forbidden to be transacted.

Moreover, the word used to express the function of the trustees in this respect is quite inappropriate to the meaning claimed by defendants. To designate is not to select or determine upon, but to show, to point out, to specify. When this act connects the vote of the voters with the place designated by the trustees, it plainly shows that the voters are to do their act of voting with reference to the place so pointed out or specified.

This construction is aided by the language of the proviso in the various changes above referred to.

In the act of 1880, the proviso requires the majority of the taxable residents to vote on "any proposition presented for the selection of a place." This indicates not only that the district meeting was to select the place, but also that the selection was to be upon a proposition—language inappropriate to the motions or resolutions offered by voters in such a meeting.

In the amendment of 1886, the language above referred to was left out, but it was provided that the same majority should be required to vote on any proposition for the condemnation of lands, from which there is a plain implication that a place had been designated, and possibly that its purchase had been reported as impracticable.

Similar language in the act as amended in 1888 indicates the same idea of a proposition laid before the meeting for the condemnation of land.

The result is, that the trustees in this case were required to designate to the special meeting called by them the place where the lands, proposed to be purchased, lay. Such a designation can only be made by some description from which voters may discover the place designated. If the description does not afford that information, it cannot be cured by proof that it was understood by voters to mean a certain and known place, for it is the place designated which is to be voted upon.

In this case no designation of the place by the trustees was made, except by the notice or call for the meeting. The description of the place therein contained admittedly was not sufficient to enable any one to discover its location. It was consequently inefficacious, and the objection to the proceedings on this ground must prevail.

An examination of all the acts on this subject renders it obvious, in my judgment, that the designation of the place of the lands proposed to be acquired must be made in the notice of the meeting which will pass on the proposition. Such notices are required to state the object of the meeting, and, in case of special meetings, no business but that indicated in the notice can be transacted.

It is not necessary to determine in this case how particular the description of the place proposed must be. As it is intended for the information of voters, it must, as we have seen, be capable of being identified and not misleading. Moreover, I think that the power of the meeting must be limited to what is fairly within the description. An appropriation for something not included therein cannot be made.

If the resolution before us was adopted upon a sufficient designation of place, it was faulty in voting to purchase what was not fairly within that designation, viz., a right of way from the proposed site to Cherry Hill.

It may be, that a school district having express power to buy land and erect school houses may, by implication, be endowed with power to purchase a right of way to an eligible location for a school house, which could not otherwise be reached by scholars. It is not necessary to decide that ques-

tion now. For here the place described, if capable of identification, abutted on highways, and an easement of way was not necessary for its use as a school site. A right of way to Cherry Hill might be convenient, but was not essential. It was not, therefore, fairly within the designation contained in the notice, and the meeting had no power to vote money for its acquisition. Upon this objection, the resolution cannot be sustained.

The resolution brought up by this writ must therefore be set aside.